**LOWENTHAL & ABRAMS, P.C.**
**DENNIS M. ABRAMS, ESQUIRE**
385 Kings Highway North, Suite 210
Cherry Hill, NJ  08034
*Counsel for Plaintiff*
Phone: (856) 667-7515

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| RICHARD BAILO | |
| 15 Winding Way Road | COMPLAINT |
| Stratford, NJ  08084 | |
| *Plaintiff* | CIVIL ACTION |
| v. | |
| BOARD OF CHOSEN FREEHOLDERS OF WARREN COUNTY, WARREN COUNTY WARDEN BYRON FOSTER, WARREN COUNTY SHERIFF SAL SIMONETTI, WARREN COUNTY SHERIFF OFFICERS JOHN DOES 1 AND 2, WARREN COUNTY CORRECTIONAL FACILITY, WARREN COUNTY CORRECTIONAL OFFICER PABLO SANCHEZ, WARREN COUNTY CORRECTIONAL OFFICERS JOHN DOES 3, 4 AND 5, AND WARREN COUNTY CORRECTIONAL OFFICER SERGEANT JANE DOE | NO. |
| | JURY TRIAL DEMANDED |
| *Defendants* | |

## **INTRODUCTORY STATEMENT**

1.    This is an action for damages sustained by a citizen of the United States and the State of

1

New Jersey, caused by the Sheriffs and Correctional Officers of the County of Warren, New Jersey who unlawfully imprisoned, assaulted, battered, punished, and harassed the plaintiff by excessive force and isolation.

2.    This action is against the Warren County Sheriff in his official capacity as a supervisory official, for failure to supervise, train, or otherwise ensure Sheriff's Officers faithfully executed the law and or policies aimed towards ensuring Due Process for the Citizens of these United States and the Sheriff's own failure to take corrective action with respect to sheriff's officers whose disregard for the established procedures and obligations was notorious; the Warren County Warden as the supervisory official responsible for the conduct of the defendant correctional officers, and for the Warden's own failure to take corrective action with respect to correctional personnel whose disregard for established procedures was notorious, to assure proper training and supervision of the personnel, or to implement meaningful procedures to discourage lawless official conduct; and against the County of Warren Board of Freeholders, as the administrators and supervisory officials of the Warren County Correctional Facility, which is sued as a person under 42 U.S.C. § 1983.

**STATEMENT OF JURISDICTION**

3.    This action is brought pursuant to 42 U.S.C. §§ 1983, 1988, the New Jersey Tort Claims Act, N.J.S. 59:1-1, the Constitution of New Jersey under the New Jersey Civil Rights Act, N.J. Stat. § 10:6-2, and the First, Fourth, and Fourteenth Amendments of the Constitution of the United States.

4. This Court has subject matter jurisdiction of the action under 28 U.S.C. §§ 1331, 1343(a)(3), (4) . This Court may also exercise supplemental jurisdiction under 28 U.S.C. § 1367 over the plaintiff's state law claims, since they arise from the same transaction or occurrence giving rise to the nucleus of operative facts.

5. Venue is proper in this District pursuant to 28 U.S.C. §1391 as the cause of action arose in this District.

6. All conditions precedent have been performed or have occurred.

**PARTIES**

7. Plaintiff is a resident of Lindenwold, Camden County, New Jersey, but at all times relevant to the allegations of this complaint was a citizen of the United States, and a resident of Bushkill, Pike County, Pennsylvania.

8. At all times relevant to this action, defendant "Pablo Sanchez" was a Correctional Officer employed by Warren County Correctional Facility, and/or was acting as the agent, servant, and employee and/or official of defendant Warren County Board of Freeholders, under color of law.

9. Pablo Sanchez is sued individually and in his official capacity.

10. At all times relevant to this action, defendants John Does 1 and 2 were Sheriffs or employees of the Sheriff of the County of Warren, acting under color of law and under the supervision of Defendant Sheriff Sal Simonetti, and/or as the agents, servants, employees, and/or officials of the Warren County Board of Freeholders; these defendants' names are currently unknown to, and undiscoverable by plaintiff, but plaintiff will amend this complaint to state the true name of "John Does 1 and 2" upon discovery of same.

11.     Sheriffs John Does 1 and 2 are sued individually and in their official capacity.

12.     At all times relevant to this action, defendants John Does 3, 4 and 5 and Sergeant Jane Doe, a Caucasian with curly red hair, were employees and/or correctional officers in the Warren County Correctional Facility; these defendants' names are currently unknown to, and undiscoverable by plaintiff, but plaintiff will amend this complaint to state the true name of "John Does 3 and 4" and "Jane Doe" upon discovery of same; John Doe 3 is a Caucasian male over six feet in height, he wore a goatee and had shaved his head.

13.     At all relevant times defendants "John Does 3, 4 and5" and "Jane Doe" were acting as the agents, servants, employees and/or officials of Defendant Warren County Correctional Facility under color of law, and under the direction, supervision, and/or control of Defendant Byron Foster and/or Warren County Board of Freeholders.

14.     Defendants "John Does 3, 4 and 5" and "Jane Doe" are sued individually and in their official capacity.

15.     At all times relevant to this action, defendant Byron Foster was the duly appointed Warden of the Warren County Correctional Facility, and in this capacity, the Warden was the commanding officer of defendants Pablo Sanchez, "John Does 3, 4 and 5," and "Jane Doe," and was responsible for their training, supervision, and conduct, and also responsible by law for enforcing the regulations of the Warren County Correctional Facility and for ensuring that Warren County Correctional personnel obeyed the laws of the State of New Jersey and of the United States.

16.     At all relevant times, Defendant Byron Foster was acting as the agent, servant, and employee of the defendant Warren County Board of Freeholders, and is sued individually and in his official capacity.

17.     The defendant Warren County Board of Freeholders is the governing corporate entity of the County of Warren, a political subdivision of the State of New Jersey and, at all relevant times, employed, governed, or controlled the other defendants named in this action.

18.     At all relevant times and in all their actions, the defendants were acting under color of law and pursuant to their authority as agents, officers, appointees, administrators, and/or employees of the Warren County Board of Freeholders.

## **COMMON FACTUAL ALLEGATIONS**

19.     On March 31, 2006 at approximately 2:00 p.m. as Plaintiff Richard Bailo was helping his employer move his business in Blairstown, New Jersey, when he was approached by Warren County Sheriff's Officers John Doe 1 and 2.

20.     The Sheriff's Officers had a bench warrant issued on March 27, 2006, alleging Plaintiff failed to attend a hearing on March 20, 2006 and inquired as to the charges of failing to pay child support presented in said bench warrant.

21.     Mr. Bailo was not aware he had to attend a hearing on March 20, 2006 and was unaware a bench warrant had been issued; nevertheless he went peacefully with the officers but did tell them he was not a resident of New Jersey but resided in Pennsylvania and that he should not have to pay child support especially in New Jersey.

22.     Neither Mr. Bailo, his ex-wife, nor his children resided in the State of New Jersey at the time.

23.     A Pike County Pennsylvania Court of Common Pleas Order dated August 19, 2005, relieved the Domestic Relations unit of that County from further accounting, citing the fact that Mr. Bailo's ex-wife had registered the child support matter in the State of New York.

24.     On December 2005, a letter from the Warren County Probation Department issued to Mr. Bailo, stating they were in receipt of an order entered December 1, 2005, directing Mr. Bailo to pay $56.48 per month in child support, citing a first payment due date of July 18, 2005.  Mr. Bailo responded to this letter, and provided documents outlining the error in light of the afore-mentioned Order of the Pike County Court of Common Pleas.

25.     In support of his position, Mr. Bailo faxed documents establishing the veracity of his claim to a Warren County Probation employee who identified herself as "Mariza."   She told Mr. Bailo that she would "take care of it."

26.     Through some as yet undetermined error or delay in correcting these administrative records, the afore-mentioned bench warrant issued, almost four months after the December 1, 2005 letter.

27.     Mr. Bailo protested to the Sheriff's Officers that he did not owe child support, that he had paid directly to his ex-wife, and showed the Officers documentation supporting the same.

28.     The Sherriff's Officers allegedly telephoned the Warren County Probation Department in order to verify Mr. Bailo's statement.

29.     After the conclusion of a purported conversation with the Probation Department, the Sheriff's Officers stated that they would take Mr. Bailo to the Probation Office so that he could verify the documents with a worker there and clear up the entire misunderstanding; Mr. Bailo peacefully and willingly left in Sheriffs' custody.

30. Instead of driving to the Probation Department, Sherriff's Officers took Mr. Bailo to the Warren County Correctional Facility, and left him inside at approximately 3:00 p.m. on Friday, March 31, 2006, telling him the probation worker didn't have time to review the papers, and that she would "see [him] on Monday."

31. Once inside, Mr. Bailo was chained to a bench in the hallway, awaiting intake with several other arrestees who were also in the hallway awaiting intake.

32. It was apparent from the situation that these arrestees had been waiting a long time, as they were restless and asked the guards to be let out; Mr. Bailo and the other arrestees were held without intake for approximately four hours, while correctional officers John Does 3, 4 and 5 and Jane Doe ate and read magazines.

33. After one arrestee asked several times to be allowed to use the restroom, a guard responded "[g]o ahead and pee in your pants," and after holding as long as he could, the arrestee could no longer withhold urination, and soiled his clothing.

34. Mr. Bailo objected to the treatment of the arrestee by telling correctional officers John Does 3, 4 and 5 "[y]ou are here to take care of us. This shouldn't happen."

35. After this, female sergeant Jane Doe appeared, accused Mr. Bailo of being "a real hard ass," and moved the other arrestees and placed them behind a glass door.

36. Mr. Bailo asked Jane Doe for a phone call, since no one knew where he was; she responded "that's the Sheriff's job, not mine, I don't have to give you anything."

37. Without ever resisting or using force to defendant himself, Mr. Bailo's right hand was then placed behind his head and after he was forced down on his knees, then pushed to the floor. one officer stood on his back to cuff him.

7

38. Mr. Bailo, while handcuffed, was then forcefully removed by officer Sanchez and John Doe #3 to a corner room; there Sanchez and John Doe #3 opened the door, lifted him up and recklessly and intentionally threw him head first inside without concern for his safety or rights. .

39. The forceful action of throwing Mr. Bailo into this room ultimately caused his left knee to strike the steel corner of a bed and the wall, his left leg and low back were injured in the process.

40. As his body went one way and his knee went the other; Mr. Bailo heard a snap in his left knee.

41. Plaintiff believes, and therefore avers, Defendant Sanchez and John Doe #3 were the guards who threw him into the isolation room, while guard John Doe 4 and 5 and Jane Doe watched and/or allowed this to occur.

42. Upon information and belief, Plaintiff avers that it was the policy, custom, protocol, and/or standard of the Warren County Correctional Officers to deny arrestees their rights fully enumerated herein, including the practice of secluding arrestees for indefinite periods of time for alleged infractions of internal protocols or for no good reason at all; using excessive and unreasonable force to subdue passive arrestees; denying their right to communicate with family and counsel; and denying their right to medical attention for injuries. Although statutes, regulations, and/or protocols were in place to ensure these rights to arrestees, it was the policy and custom of the Warren County Correctional Facility and its employees to deny their lawful duties and obligations.

43. Mr. Bailo remained in isolation until 8:00 p.m. Saturday, the following day; he called for medical attention several times for the injury he sustained when thrust into isolation, but received

only two aspirin which were hardly sufficient to alleviate the pain he experienced during his isolation.

44.     At approximately 8:00 p.m. Saturday night, defendant correctional officer Sanchez appeared, asked Mr. Bailo to sign some paperwork.

45.     Defendant correctional officer Sanchez finally allowed Mr. Bailo to place a phone call more than 24 hours after his arrest and isolation.

46.     Mr. Bailo remained in custody until Monday morning, when he was informed that there had been a mistake at the courthouse, that he was no longer under arrest, and he did not have to appear in front of a judge.

47.      As a result of the misconduct described above, plaintiff experienced humiliation, emotional distress, pain and suffering, incurred expenses including legal fees in connection with the deprivation of his Constitutional rights, and was otherwise injured.

48.     The plaintiff was also permanently physically injured and disabled as a result of the above described, such injuries include but are not limited to: injury to his nerves and his back, a torn meniscus and anterior cruciate ligament in the left knee requiring multiple surgeries, multiple bruises, abrasions, and contusions on his body, loose fragments floating within his left knee, build up of fluid in the knee, posterior capsular synovitis of the left knee, all leaving him a candidate for future knee replacement, altered gait and problems with his spine.

49.     The abuse to which plaintiff was subjected was consistent with an institutionalized practice of the Warren County Correctional Facility, which was or should have been known to defendant Warren County Board of Freeholders.

50. Despite knowledge of these institutionalized practices, the defendant Warren County Board of Freeholders failed to take sufficient and effective action to prevent Warren County Correctional personnel from continuing to engage in this type of misconduct.

51. The failure of defendant Warren County Board of Freeholders and Byron Foster to properly train defendants Pablo Sanchez, Jane Doe, and John Does 3, 4 and 5, included the failure to instruct them in applicable provisions of the Penal Law of the State of New Jersey and the proper and prudent use of force.

52. Defendant Warden encouraged and/or allowed this unreasonable and excessive force by failing to adequately supervise, discipline, correct, or train the Correctional Officers under his command.

53. The failure of defendant Warren County Board of Freeholders to properly train and supervise defendants Sheriff Sal Simonetti and Sheriff's Officers John Does 1 and 2 including the failure to maintain proper records to ensure Constitutionally valid arrests issued upon Probable Cause, the failure to train, inspect, supervise, discipline, correct, and otherwise ensure that these defendants faithfully executed their lawful duties, and the failure to correct same where defendant's pattern of misconduct was or should have been known to defendant Warren County Board of Freeholders in their supervisory capacity.

## COUNT I: VIOLATION OF FEDERAL CONSTITUTIONAL RIGHTS UNDER §1983

54. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-53 as if fully set out herein.

55.  The exercise of the established policies above violated plaintiff's clearly established rights under the United States Constitution:

   a. Against unreasonable seizure of his person;

   b. Against the use of unreasonable, unnecessary, and excessive force;

   c. To speak and petition freely for the redress of grievances;

   d. To Due Process before being deprived of life, liberty, or property;

   e. To be free from punishment except upon conviction.

56.  The separation and seclusion of Mr. Bailo in retaliation for his protected speech seeking fair and humane treatment of other arrestees violated his First Amendment right to speak freely and petition for the redress of grievances.

57.  The reckless and patent disregard for Mr. Bailo's safety and bodily integrity caused by the Correctional Officers' use of excessive force, isolation, and denial of medical attention and rights violated the Fifth, Fourth, Eight, and Fourteenth Amendments, because among other things, it was cruel, excessive, and served no legitimate interest.

58.  As a pre-trial detainee, Mr. Bailo was entitled to heightened protection while in the custody of the Correctional Facility, having not been found guilty of any crime.  As a result, the separation and seclusion by Correctional Officials was a form of punishment prohibited by the Eight Amendment, as made applicable by the Due Process clause of the Fourteenth Amendment.

59.  Moreover, Mr. Bailo's arrest was Constitutionally deficient from the outset, as there was never Probable Cause to support a bench warrant, as the warrant was issued solely and proximately as a result of the County of Warren's failure to update, correct, and modify its records.

## **COUNT II: CONSPIRACY TO VIOLATE**

## **FEDERAL CIVIL RIGHTS**

60.     Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-59 as if fully set out herein.

61.     The forenamed Correctional Officers acted willfully, deliberately, maliciously, and/or with reckless disregard and indifference for Plaintiff's Constitutional Rights.

62.     In the course of such conduct, defendants Warren County Board of Freeholders, Sheriff Sal Simonetti, Warden Foster, Officer Sanchez, and Officers John Does 1-5, and Jane Doe caused the injuries to Plaintiff mentioned herein and conspired to deprive Plaintiff of his Civil Rights, as evidenced by:

   a. Plaintiff's remaining in isolation for more than 24-hours without release, when any one of the said individuals on duty could have released him;

   b. the forceful removal of plaintiff from the main area to the isolation area by two or more guards acting in concert;

   c. tolerating, allowing, or being recklessly unaware of the policy and/or practice of denying arrestees their right to make a phone call following arrest and/or the afore mentioned deprivations.

   d. allowing Plaintiff to be taken to and remain in the County Correctional Facility instead of in front of a Judge or to his probation officer.

## COUNT III: STATE LAW CLAIMS

## UNDER THE NEW JERSEY CIVIL RIGHTS ACT

63.     Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-62 as if fully set out herein.

64.     At all times, defendants acting under color of law interfered with the exercise and enjoyment of the above-enumerated substantive rights guaranteed by the Federal Constitution, by threats, intimidation, and coercion.

65.     Additionally, Mr. Bailo's substantive rights under the Constitution of New Jersey were vitiated including:

   a. The right to freely speak and publish sentiments concerning any subject;

   b. The right to be secure in his person against unreasonable searches and seizures, including the right to be free from excessive force;

   c. The right not to be arrested except on probable cause;

   d. The right not to be imprisoned for debt or judgment founded on contract;

   e. The right to Due Process of law before being deprived of life, liberty, or property.

## COUNT IV: - FALSE ARREST, ASSAULT, BATTERY, NEGLIGENCE

66.     Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-65 as if fully set out herein.

67.     On June 19, 2006, Plaintiff filed a Notice of Tort Claim notifying defendants Warren County Board of Freeholders, Warren County Sheriff Sal Simonetti, Warren County Warden

Byron Foster, and Warren County Correctional Officers John Doe 1-5 and Jane Doe of his claim, in a timely fashion, as required by N.J.S. 59:1-1, et seq.

68.     The defendants' use of excessive force was an intentional assault and battery.

69.     In the alternative, the officers' misconduct was negligent in that the officers deviated so far from the standard of care in reckless disregard of Mr. Bailo's Constitutional rights.

70.     Defendants owed a duty to Mr. Bailo not to violate his rights, and breached said duty in the arbitrary arrest based on a clerical error, the use of excessive force, denial of medical treatment, retaliation for protected speech, denial of right to a phone call, and unlawful seclusion of Mr. Bailo in isolation from other arrestees.

71.     As a direct and proximate result of the correctional officers' conduct, abuse and use of excessive force, plaintiff suffered injuries and damages, including but not limited to:

   a. Medical expenses in the past and future;

   b. Physical pain and suffering and mental anguish in the past and future;

   c. Disfigurement in the past and future;

   d. Physical impairment in the past and future;

   e. Lost earnings;

   f. Damage to earning capacity;

   g. Torn meniscus and anterior cruciate ligament in the left knee, requiring surgery and eventual knee replacement;

   h. Posterior capsular synovitis;

   i. Multiple bruises, abrasions, contusions, loose fragments, and build up of fluids in the left knee and area surrounding the anterior cruciate ligament;

   j. Injury to his nerves, nervous system, spine and spinous process.

## ATTORNEY'S FEES

72. Plaintiff incorporates by reference the factual allegations contained in paragraphs 1-71 as if fully set out herein.

73. It was necessary for Plaintiff to hire the undersigned counsel to file this lawsuit. Upon judgment, Plaintiff is entitled to an award of attorney fees and costs under 42 U.S.C. § 1988 (b).

WHEREFORE, Plaintiff asks for judgment against defendants for the following:

   a. Compensatory and actual damages for personal injury and other loss in excess of $75,000 exclusive of interests and costs;

   b. Prejudgment and post judgment interest;

   c. Costs of suit, including attorney's fees;

   d. Punitive damages

   e. All other relief the court deems appropriate.

Dated: March 28, 2008                                              Respectfully Submitted,


                                                                   s/ Dennis M. Abrams

                                                                   Dennis M. Abrams, Esq.,
                                                                   Id No. 40184
                                                                   **LOWENTHAL & ABRAMS, P.C.**
                                                                   385 Kings Highway North, Suite 210
                                                                   Cherry Hill, NJ  08034
                                                                   *Counsel for Plaintiff*
                                                                   Phone: (856) 667-7515
                                                                   Email:  dennis@lowabram.com